# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Judge Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 3479 | **DATE** | November 1, 2011 |
| **CASE TITLE** | DEPREST v. KANKAKEE COMMUNITY COLLEGE | | |

**DOCKET ENTRY TEXT:**

Defendant's motion for change of venue [17] is GRANTED. This action is to be transferred to the United States District Court for the Central District of Illinois.

## STATEMENT

    Plaintiff Debbie Deprest ("Deprest" or "Plaintiff") sues her former employer, Kankakee Community College ("KCC" or "Defendant") for alleged violations of the Family and Medical Leave Act. KCC has moved to transfer venue from this court to the United States District Court for the Central District of Illinois.

I. BACKGROUND

    Deprest is a resident of Bourbonnais, Illinois, a city located in the Central District. According to the complaint, Deprest was a teacher employed by KCC until her termination sometime in 2011. In August of 2010, according to the complaint, Deprest sought to take advantage of FMLA leave to which she was entitled. Deprest's daughter had become ill and, on August 18, 2010, was admitted to the intensive care unit at the University of Chicago's medical center in Chicago, Illinois, in the Northern District. Deprest's daughter remained in intensive care for three weeks. She was then transferred to the Rehabilitation Institute of Chicago, where she remained through September and October. Deprest used intermittent periods of FMLA leave to help care for her daughter.

    On September 23, 2010, Deprest allegedly received an email from Kim Mau, the Director of Nursing at KCC, instructing Deprest to submit a "plan for making up the missed hours" from when she was caring for her daughter in Chicago. Deprest argues that this instruction violated her rights under the FMLA, because other teachers who missed time for non-FMLA reasons were not instructed to make up the time.

II. ANALYSIS

| STATEMENT |
|---|

28 U.S.C. § 1404 governs changes of venue. In relevant part, the statute states that "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *Id.* at § 1404(a). Section 1404(a) places discretion in the court to consider motions for transfer of venue according to a "case-by-case consideration of convenience and fairness." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The two principal interests are convenience and justice. *Id.* As to convenience, courts should consider such factors as (1) the plaintiff's choice of forum, (2) the situs of the material events, (3) the relative ease of access to sources of proof, (4) the convenience of the parties, and (5) the convenience of the witnesses. *Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 914 (N.D. Ill. 2009). As to the interests of justice, courts look at docket congestion and speed to trial in each venue, each court's relative familiarity with the applicable law, the respective desirability of resolving the dispute in either locale, and the relationship of each community to the controversy. *Research Automation*, 626 F.3d at 978.

With respect to convenience, the factors weigh as follows. First, the plaintiff has chosen the Northern District of Illinois despite the fact that her home forum is, in fact, the transferee forum. Therefore, though this factor weighs in Plaintiff's favor, it weighs less heavily than had her chosen forum been her home forum. *See Amorose v. C.H. Robinson Worldwide, Inc.,* 521 F. Supp. 2d 731, 735 (N.D. Ill. 2007). Second, the situs of material events tilts towards Kankakee and the Central District. Though Plaintiff took her leave in Chicago, the alleged discrimination took place in and around Kankakee in the Central District, where Defendant would have made any decisions or committed any discriminatory acts. The relative ease of access to sources of proof similarly tilts towards the Central District. While some proof may be in Chicago in the form of the medical records (which may prove relevant should KCC challenge the nature of Plaintiff's leave), the majority of the proof, such as employment records and important communications, will be located in the Central District at KCC.

As for the fourth factor - the convenience of the parties - Plaintiff makes an interesting argument. While conceding that both parties reside in the Central District, Plaintiff points out that the actual courthouse to which the parties would travel in the Northern District is closer (Chicago, sixty-five miles away) than the nearest federal courthouse in the Central District (Urbana, eighty miles away). Defendant counters that the Central District remains more convenient, and then speculates that it is, in fact, Plaintiff's counsel (a Chicago-based law firm), that is pushing for the Northern District. Considering these competing claims, this factor is neutral. As for the final factor, the convenience of witnesses, this factor weighs towards the Central District. Again, it is true that some medical personnel are located in Chicago. But the medical aspects of the case may or may not be a major - or even a contested - aspect of this case. In contrast, the actions of a variety of school officials will undeniably be at issue, and those officials are in the Central District. After surveying these factors, it is clear that the Central District is modestly more convenient than the Northern District.

With respect to the interests of justice, the first two factors are neutral. The docket is more congested in the Northern District (470 pending cases per judgeship, compared to 370 in the Central District), but cases progress to disposition more quickly in the Northern District (6.2 months, compared to 10.9 in the Central District). Theses subfactors point in opposite directions, and in any event do not present massive discrepancies. As far as the applicable law, this factor is neutral, as the case presents federal statutory questions.

It is the final two factors in the interest of justice consideration - the desirability of resolving controversies in their locale and the relation of the community to the occurrence - that tip the scales to

| STATEMENT |
|---|

transfer. This controversy involves residents of the Central District, one of which, the Kankakee Community College is an important local institution. If, as alleged, KCC has engaged in employment discrimination, that is a dispute which should rightly play out in the community of the Central District of Illinois. *See Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 962 (N. D. Ill. 2000).

One final point bears brief discussion. In portions of the motion, response, and reply, there is some argument tending to address the question of whether the current venue is proper at all. This argument appears relevant only to a motion to dismiss for improper venue under Rule 12(b)(3). Here, however, Plaintiff has not moved to dismiss the case under Rule 12(b)(3), only to transfer it under § 1404(a). Ultimately it makes no practical difference, as it lies within my discretion to transfer an action in lieu of dismissal. *See DeJohn v. The TV Corp., Int'l*, 245 F. Supp. 2d 913, 921 (N.D. Ill. 2003) (interpreting 28 U.S.C. § 1406(a)). In my discretion, I considered transfer first and, because I find that transfer is appropriate, any implied motion to dismiss the case for improper venue is now moot.